UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VELSICOL CHEMICAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 2534 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| WESTCHESTER FIRE INSURANCE COMPANY, as successor in interest to INTERNATIONAL INSURANCE COMPANY, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Velsicol Chemical, LLC sues Westchester Fire Insurance Company for its alleged failure to provide insurance coverage. The case is before the Court on plaintiff's motion to compel production of documents withheld on the grounds of privilege. For the reasons set forth below, the motion is granted in part and denied in part.

**Background**

At the times relevant to this suit, "Velsicol and its predecessors in interest, engaged in the manufacture, distribution, sale, marketing, and disposal of a variety of specialty chemical products." (Compl. ¶ 9.) Velsicol purchased primary and excess insurance policies to address the risks associated with its business, including an excess policy for the period January 1, 1983 through January 1, 1986 from Westchester's predecessor (hereinafter, defendant). (*Id.* ¶¶ 11, 17.) All of the primary liability insurance coverage that Velsicol purchased for that period "has been exhausted by payment of claims, settlements or through the insolvency of the insurance carriers." (*Id.* ¶ 16.)

Velsicol has been sued by three individuals who claim they were injured by exposure to chemicals it manufactured and by federal and state agencies that claim Velsicol's operations caused environmental damage in various locations. Velsicol tendered defense of these claims to defendant, which defendant refused. Velsicol contends that refusal was a breach of the parties' contract and seeks damages and declaratory relief.

## Motion to Compel

Velsicol has moved to compel production of twenty-one documents defendant withheld from production on the grounds of attorney client and/or attorney work product privilege. The Court has reviewed the contested documents *in camera*.

Under Illinois law, the attorney client privilege bars the Court from compelling disclosure of "privileged communications between a party or his agent and the attorney for the party." Ill. S. Ct. R. 201(b)(2); *see Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 981 N.E.2d 345, 355 (Ill. 2012) ("Where legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the protection is waived.").[1] "Illinois adheres to a strong policy of encouraging disclosure . . . ." *Id.* at 356 (quotation omitted). Thus, the privilege is "limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such." *Id.* The party asserting the privilege has "the burden of

---

[1] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. "[A] district court exercising diversity jurisdiction must apply the law of privilege which would be applied by the courts of the state in which it sits." *Abbott Labs. v. Airco, Inc.*, No. 82 C 3292, 1985 WL 3596, at *2 (N.D. Ill. Nov. 4, 1985). Illinois applies the forum state's law to "questions of discovery and evidence." *Id.* (citing *People v. Saiken*, 275 N.E.2d 381, 385 (Ill. 1971); *Ogdon v. Gianakos*, 114 N.E.2d 686, 689 (Ill. 1953); *People v. Wells*, 44 N.E.2d 32, 36 (Ill. 1942); *Jackson v. Shuttleworth*, 192 N.E.2d 217, 218 (Ill. App. Ct. 1963)).

showing facts which give rise to [it]." *Consol. Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 257 (Ill. 1982).

The work product doctrine protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless "the [requesting] party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). "There is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, *likely* to lead to litigation, [has] arisen.'" *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d at 612, 622 (7th Cir. 2009) (alteration and emphasis in original) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)). "Only documents prepared in the latter circumstances receive work-product protection." *Id.* "[T]he party seeking to assert the work product privilege has the burden of proving that at the very least some articulable claim, likely to lead to litigation, has arisen." *Binks*, 709 F.2d at 1119 (quotation and alteration omitted).

*Prepared In Anticipation of Litigation*

Velsicol argued in its brief that documents significantly pre-dating the 2015 filing of this case could not have been prepared in anticipation of litigation. (*See* Doc. #36, p. 9.) However, as defendant points out, and Velsicol admitted at oral argument, the parties have been litigating these claims, albeit in different forms and forums, since November 3, 1997. Thus, that date is the starting point, in this case, for determining whether a document was prepared in anticipation of litigation.

*Undated and Unknown Author / Recipient Document*

Velsicol takes issue with Westchester's claim of protection to three documents that are not dated, nor are the author(s) and recipient(s) identified. (Doc. #37, p. 6.) In its response, Westchester indicates that two of the three so-called "undated documents" have been produced. (Doc. #40, n. 6.) Thus, this Court is left to resolve what protection, if any, is afforded to only one of the "undated documents."

Because it is well-settled that the party asserting protection must establish the protected status of the document at issue, *see Logan v. Commercial Union Insurance Co.*, 96 F.3d 971, 976 (7th Cir. 1996), the Court afforded Westchester the opportunity to address this issue. (Doc. #43.) Rather than presenting factual support to show the potentially protected nature of the document, Westchester relied on legal precedent to establish protection by referring this Court to *inter alia, Coltec Industries v. American Motorist Insurance Co.*, 197 F.R.D. 368 (N.D. Ill. 2000).

We have reviewed *Coltec*, and while recognizing its general applicability to the issue before the Court, we are not persuaded that the legal underpinning of *Coltec* provides a basis for protection of the "undated document." As argued by Westchester's counsel, *Coltec* supports Westchester's position because *Coltec* acknowledges that information related to insurance reserves is generally not considered relevant in insurance coverage disputes. *Id.* at 372. Westchester is correct that the "undated document" does, in part, discuss insurance reserves. However, the document also reviews other areas of interest. Moreover, and more importantly, the "undated document" lacks an author and a recipient.[2] Thus, we are left to speculate as to who prepared this document, and more significantly, who received this document. There are certainly indications that this document may have been prepared by a Westchester (or

---

[2] We agree with Westchester that based on the contents of the "undated document," the document was prepared after November 3, 1997. (Doc. #40 n.7.) Thus, we conclude that the document was prepared in anticipation of litigation and from a chronological perspective would be entitled to work product protection.

predecessor) employee. Additionally, the document has a footer on each page reading, "Privileged & Confidential Includes Attorney/Client Communication & Attorney Work Product Material." However, as the withholding party, Westchester has the burden of establishing the existence of both the attorney-client and work-product privileges. *See Logan*, 96 F.3d at 976 (work product); *Binks*, 709 F.3d at 1119 (work product); *Consol. Coal*, 432 N.E.2d at 257 (attorney-client); *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 990 (7th Cir. 1994) (attorney-client) (citing *Consol. Coal*).

Westchester has not met its burden. Not only are we left to wonder who prepared this document, and for what purpose, we have no sense of who received this document, and whether any efforts were made to maintain the privileged or confidential nature of the document; all of which, as noted above, Westchester has the burden of proving. This is obviously not a shortcoming of Westchester's current counsel, but rather the by-product of litigation that has spanned three decades. Indeed, counsel's strategy of relying on legal precedent as opposed to factual support is understandable. However, *Coltec* itself holds that several documents that do not have a known author are not protected from discovery *because*, in part, the authors are unknown. *Coltec,* 197 F.R.D. at 374 (site summaries with unknown authors not protected).

*Coltec* is not alone in this view that a document with unknown authors or recipients is difficult to protect from production under privilege or work-product protection. *See, e.g., RBS Citizens N.A. v. Husain*, 291 F.R.D. 209, 218-19 (N.D. Ill. 2013). Accordingly, Westchester shall produce this document.

*Remaining Documents*

The second document is a 4/11/14 email from one of defendant's employees to another, attaching a summary of Velsicol's claims. Though the document discusses a strategy for

resolving the claims, it clearly states that the strategy has been shared with Velsicol's counsel. Thus, the document is not privileged and must be produced.

The third document, dated 11/18/14 and described as "policy analysis," was sent to, among other people, one of defendant's lawyers. However, there is no indication that it solicited or contains any legal advice, or that it is anything other than an ordinary course business document. Therefore, it must be produced.

The remaining documents are emails circulated among defendant's employees discussing the amounts budgeted for the claims and emails circulated among defendant's employees, its counsel, and its consultant analyzing the claims and damages in this case.[3] These documents were prepared in anticipation of litigation and are subject to the work product privilege. Because Velsicol has not "show[n] that it has substantial need for the[se] materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," its motion with respect to these documents is denied.

---

[3] The Court raised concerns that documents prepared by a consultant retained by a party, as opposed to a consultant retained by counsel, may not be entitled to the same scope of work-product protection. However, case law supports Westchester's position that work-product protection can extend to communications with a consultant retained by a party if such consultation is in anticipation of litigation. *See CSX Transp. v. Chi. S. Shore*, No. 2:13-CV-285-RL-PRC, 2015 WL 470393, at *4 (N.D. Ind. Feb. 4, 2015); *Crouse Cartage Co. v. Nat'l Warehouse Inv.,* No. IP02-071CTK, 2003 WL 23142182, at *2 (S.D. Ind. Jan. 13, 2003).

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Velsicol's motion to compel [36]. The motion is granted as to the first three of the twenty-one documents (the undated document and those dated 4/11/14 and 11/18/14, respectively) that remain in contention but denied as to the rest.

**SO ORDERED.**                                  **ENTERED: August 18, 2016**


_____
**M. David Weisman**
**United States Magistrate Judge**